**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

3:11-CR-0195

v.

(JUDGE CAPUTO)

PETER SEPLING,

Defendant.

## MEMORANDUM

Presently before the Court are a number of pretrial motions filed by Defendant Peter Sepling. (Docs. 30, 31, 32, 33, 34, 35, 36, 37, 38, 58, 59.)  For the foregoing reasons, Defendant's motions will be granted in part and denied in part.

## I. Background

The relevant facts are set forth in the Government's Response to Defendant's Motions to Suppress Evidence and Statements (Doc. 61)[1] as follows:

On April 21, 2011, Customs Officers working at the DHL Courier Facility in Erlanger, Kentucky, targeted a parcel being shipped from China to John Nikoloff in West Wyoming, Pennsylvania. (Doc. 61.)  The parcel contained approximately 1.1 kilograms of Gamma-Butyrolactone ("GBL"). (Doc. 61.)

On April 26, 2011, Homeland Security Investigation in conjunction with the Pennsylvania State Police ("PSP") conducted a controlled delivery of the package to Mr. Nikoloff. (Doc. 61.)  Shortly thereafter, Mr. Nikoloff was detained by enforcement officials. (Doc. 61.)  At that time, Mr. Nikoloff was presented with a Statement of Rights form, which he read and signed, and he voluntarily agreed to speak with federal investigators. (Doc. 61.)  Mr. Nikoloff informed the investigators that he had agreed to accept the package for a

---

[1]     None of Sepling's pretrial filings contain a history of relevant factual events. Additionally, Sepling did not respond to the Government's version of the facts as set forth in the opposition to Defendant's suppression motions.

second individual, Peter Sepling. (Doc. 61.)  During the interview, Mr. Nikoloff agreed to place a monitored phone call to Sepling to arrange a meeting to deliver the GBL. (Doc. 61.)

At 3:30 pm on April 26, 2011, Mr. Nikoloff delivered the package to Sepling in a restaurant parking lot. (Doc. 61.)  After Sepling left the parking area in his automobile, PSP troopers conducted a traffic stop of Sepling. (Doc. 61.)  Sepling subsequently agreed to be interviewed and was transported to PSP Troop P. (Doc. 61.)

Sepling was then presented with a Statement of Rights form, which he read and signed. (Doc. 61, Ex. A.)  Sepling acknowledged that he was explained his rights. (Doc. 61, Ex. A.)  And, after confirming that he understood his rights, he freely and voluntary waived them without threat or intimidation. (Doc. 61, Ex. A.)  Sepling then informed investigators that he ordered the GBL package online. (Doc. 61.)  Sepling also told investigators that he paid Mr. Nikoloff to accept the package for him. (Doc. 61.)

Sepling also consented to the search of his residence and a storage locker. (Doc. 61; Exs. B-C.)  Sepling's consent to these searches are confirmed by two consent forms signed by Sepling indicating that he authorized the searches voluntarily and without threat or coercion. (Doc. 61, Exs. B-C.)  Investigators recovered multiple bottles of pills and liquids as a result of the search of Sepling's residence. (Doc. 61.)

Based on these events, Sepling was indicted and charged with numerous controlled substance related offenses.  Sepling has now filed a number of motions seeking pretrial discovery. (Docs. 30-38.) In addition, Sepling has filed two suppression motions. (Docs. 58-59.)  The motions have been fully briefed and are now ripe for disposition.

## II. Discussion

### A.    Motion for Notice of Rule 404(b) Evidence (Doc. 30)

Sepling seeks a Court order requiring the Government to provide pretrial notice of its intention to rely upon other crimes, wrongs, acts, and misconduct evidence at trial. Federal Rule of Evidence 404(b) states that upon request of the defendant, the prosecution shall provide reasonable pretrial notice of any evidence of other crimes, wrongs, or acts that it intends to introduce at trial. The Government agrees to comply with Sepling's request for

reasonable notice of any uncharged misconduct evidence it will offer under Rule 404(B), acknowledging the benefits of early disclosure.  In addition, the Government indicates that it has already provided Sepling's counsel with information relating to three prior felony drug convictions.  Therefore, Sepling's motion will be denied.

## B.    Motion for Early Disclosure of Jencks Material (Doc. 31)

Sepling requests an order compelling the Government to provide early disclosure of Jencks material.  The Jencks Act states that in federal criminal prosecutions, the Government need not produce any statement or report made by a Government witness or prospective Government witness (excluding the defendant) until the witness has testified on direct examination at trial. 18 U.S.C.A. § 3500(a).  After direct examination, however, "the court shall, on motion of the defendant, order the United States to produce any statement .. of the witness in possession of the United States which relates to the subject matter as to which the witness has testified." *Id*. § 3500(b).  Federal Rule of Criminal Procedure 26.2 has extended the Jencks Act so that production of statements is also required after testimony of a Government witness at a preliminary hearing, sentencing, probation hearing, detention hearing, or Rule 8 hearing. *See* Fed.R.Crim.P. 26.2(g).

However, a district court does not have the power to compel early production of Jencks material.  *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir.1978); *United States v. Moyer*, 726 F.Supp.2d 498, 513 (M.D.Pa.2010).  Here, the Government has indicated that the Jencks material will be provided shortly before trial.  Although the Government may choose to provide the material earlier as a courtesy, *see Murphy*, 569 F.2d at 773 n. 5, nothing in the Jencks Act, the Federal Rules of Criminal Procedure, or Third Circuit precedent requires early disclosure.  As such, Sepling's motion will be denied.

## C.    Motion for Disclosure of Expert Credentials (Doc. 32)

Defendant seeks the following information regarding expert witnesses from the Government: (1) the name and address of every expert the government plans to call in its case in chief; (2) the curriculum vitae of each expert; (3) information on the last twenty trials in which each expert has participated, including the name and number of the case, the court

where the case was tried, the party for whom the expert testified; whether the expert testified pursuant to a fee arrangement; and a summary of the expert's testimony; (4) a list of the past twenty cases where the expert was not qualified to testify by the trial court, and information about that proposed testimony; and (5) a similar list of the last twenty trials in which the expert was qualified to testify. In response, the Government asserts that it will provide the identities and credentials of the expert witnesses it intends to call at trial. (Doc. 40.) The Government, however, does not identify whether it will provide information related to the prior cases in which the witness has or has not been qualified as an expert. (Doc. 40.)

Federal Rule of Criminal Procedure 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use" in expert testimony. Fed. R.Crim. Pro. 16(a) (1)(G). Such a summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id*. This rule is intended to provide the defendant with "a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Advisory Committee Notes to 1993 Amendment of Fed. R.Crim. P. 16.

Although Sepling does not cite any precedent in support of his request for disclosure of this information, Judge Munley has recently granted a motion similar to Sepling's request. *See United States v. McNeil*, No. 3:09-cr-320, 2010 WL 56096, at *7 (M.D. Pa. Jan. 5, 2010). The Court will grant Sepling's motion and adopt Judge Munley's well-reasoned analysis, which provided that:

> The summaries of previous testimony provided by the government need not be extensive, however. Those summaries should provide the subject of the previous testimony and the conclusion reached by the expert. Explanations of cases where the expert's testimony was not allowed should provide a brief explanation of the reasons for that exclusion, i.e., the testimony was deemed irrelevant. The government should keep in mind that the purpose of this disclosure is to provide defendant with an opportunity to challenge the expert's opinion and qualifications.

*McNeil*, 2010 WL 56096 at *7.

## D.     Motion for Production of Impeachable Convictions of Witnesses (Doc. 33)

Sepling seeks a Court order requiring the Government to produce within a

reasonable time before trial evidence of all impeachable convictions of witnesses called by the Government. The Government indicates that it will provide a record of any impeachable convictions, but none exist at this time. (Doc. 40.) Should the circumstances change, the Government will provide the information of the relevant convictions to Sepling's counsel. (Doc. 40.)

As the Government acknowledges, this evidence must be turned over prior to trial. See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Impeachment evidence, however, may be disclosed to the defense as late as the day that the witness will testify in court. *See United States v. Higgs*, 713 F.2d 39, 44 (1983). Here, because the Government assures that no such impeachable convictions exist at this time for any prosecution witnesses and that Sepling will be provided with any impeachable convictions should the circumstances change, an order mandating disclosure of this information is unnecessary. Thus, Sepling's motion will be denied.

E.     **Motion to Reveal the Deal (Doc. 34)**

Sepling requests that the Government provide him with any information relating to plea agreements, offers of immunity or any other "deals" that are made with any government witnesses. The Government asserts that no such deals or offers have been made to date. (Doc. 40.) The Government also acknowledges that should this change, the Government will provide Sepling with this information as required by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). (Doc. 40.)

Evidence of plea bargains and agreements of leniency "must be turned over prior to trial, [but] this motion is premature. Impeachment evidence may be disclosed to the defense as late as the day that the witness will testify in court." *United States v. Nestor*, No.3:09-cr-0397, 2010 WL 2696776, at *14 (M.D. Pa. July 6, 2010) (citing *Giglio*, 405 U.S. 105; *Higgs*, 713 F.2d at 44). As the Government assures that any evidence relating to plea bargains or agreements of leniency with government witnesses will be provided to Sepling, his motion to reveal the "deal" will be denied.

5

**F.    Motion for Attorney Conducted Voir Dire (Doc. 35)**

Sepling requests the Court to issue an order permitting his counsel to conduct personal voir dire in order to make reasonable inquiry of the prospective jurors' perceptions regarding certain facts related to the Government's case. The Government argues that there is nothing special about this case which would warrant time-consuming and unnecessary individual voir dire. (Doc. 40.)

Sepling's request will be denied. The court's standard procedure in conducting voir dire in a criminal case is to permit questions to be asked of the group as a whole and, where indicated by privacy concerns or the prospect of tainting other jurors, individual voir dire out of the hearing of the other prospective jurors is conducted. Sepling's motion will be denied.

**G.    Motion for List of Witnesses and Witness Statements (Doc. 36)**

Sepling seeks a Court order requiring the Government to produce a list of witnesses that may be called to testify at trial and written or oral statements made by witnesses or Sepling. The Government asserts that it is not required to provide Sepling with a list of witnesses pursuant to Fed. R. Crim. P. 16. (Doc. 40.)

Generally, the Government is under no obligation to supply the defendant with a list of witnesses. *See United States v. Delisser*, No. 10-82, 2011 WL 843947, at *2 (D.N.J. Mar. 8, 2011) (citing *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir.1972)); *Nestor*, 2010 WL 3191888, at *5 (the defendant is not entitled to a list of the Government's witnesses)). And, as the Court finds no reason for such a list to be produced, Sepling's request for a list of witnesses will be denied. Furthermore, the Government has already complied with Sepling's request for information related to his statements and confessions, as the Government has provided Defendant's counsel with the reports and communications related to the investigation of Sepling. (Doc. 40.) And, the Government will provide additional materials in compliance with the Jencks Act. Defendant's motion will therefore be denied.

**H.    Motion for Discovery of Sentencing Guidelines Materials (Doc. 37)**

Sepling also seeks discovery of conduct and circumstances that may impact the calculation of the Sentencing Guidelines in this case. The Government argues that

disclosure of such material contravenes the requirements of Rule 16. (Doc. 40.)

Sepling provides no support for his broad request for discovery of all information potentially relevant to a calculation of his exposure under the Sentencing Guidelines. However, in *United States v. Robinson*, No. 05-cr-443, 2007 WL 790013, at *10 (M.D. Pa. Mar. 14, 2007), Chief Judge Kane denied the defendant's request for Sentencing Guideline information that is largely similar to Sepling's request. In denying the motion, Chief Judge Kane concluded that "the United States is under no obligation to provide Defendant with a calculation regarding his possible sentencing range, or to turn over any information that might potentially bear upon the calculation of Defendant's sentence under the Sentencing Guidelines." *Id*. Furthermore, "if the Government were required to provide such information and calculations to counsel . . . , such would arguably be required in all cases where counsel moved to compel production of such information. The Court is aware of no rule requiring that the Government undertake such an obligation." *Id*. As Sepling fails to provide a persuasive argument to the contrary, his motion for discovery of Sentencing Guidelines material will be denied.

## I.     Motion for Production and Disclosure of Co-Defendants' Statements (Doc. 38)

Sepling seeks a Court order requiring the Government to produce any and all incriminating statements made by co-defendants in this case. The Government contends that co-defendant Nikoloff's statements have been provided in a report to Sepling's counsel.

Here, Sepling has already been provided with the statements of his co-defendant/co-conspirator. Moreover, "[a]lthough any statement made by a co-conspirator . . . must be provided to the defendant pursuant to the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure, [the Court] cannot compel the government to turn over such statements before the witness actually testifies at trial." *United States v. Smith*, No. 07-cr-289, 2009 WL 546211, at *5 (M.D. Pa. Mar. 4, 2009) (citing *United States v. Murphy*, 569 F.2d 771, 773-74 (3d Cir. 1978)). As such, Sepling's motion will be denied.

## J.     Motion to Suppress Evidence (Doc. 58)

Sepling moves to suppress evidence which he argues was obtained in violation of

his constitutional rights. Sepling asserts that the Government conducted a warrantless search of his residence and storage locker without voluntary consent in violation of his Fourth Amendment rights. (Doc. 58.) In opposition, the Government points to two consent forms which explicitly advise Sepling of his right to refuse to consent to the searches. (Doc. 61, Exs. B-C.) The consent forms signed by Sepling also provide that the authorization to search his residence and storage locker were "without threats, promises, pressure, or coercion of any kind." (Doc. 61, Exs. B-C.) As a result of the search, numerous bottles of pills and liquids were discovered. (Doc. 61.)

The Fourth Amendment guarantees that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). There is a presumptive requirement that searches or seizures be carried out pursuant to a warrant. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Nevertheless, the warrant requirement is excused when consent to the search is provided by one with the power to give such consent. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 241, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). "It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth*, 412 U.S. at 219. "To justify a search based on consent, the Government 'has the burden of proving that consent was, in fact, freely and voluntarily given.'" *United States v. Price*, 558 F.3d 270, 277-78 (3d Cir. 2009) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)). And, voluntariness is determined by the totality of the circumstances. *See Price*, 558 U.S. at 278. "Factors to consider include:

the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment." *Id*.

Sepling's motion to suppress will be denied.[2]   Based on the totality of the circumstances, Sepling voluntarily consented to the search of his residence and storage locker.  In particular, Sepling was provided with a consent form advising him of his right to refuse the search of his property.  Nevertheless, Sepling consented to the search without threat or coercion.  Moreover, the length of Sepling's encounter with law enforcement and the duration of his detention suggests that Sepling voluntarily consented to the search of his storage locker and residence.  As such, the motion to suppress evidence will be denied.

## K.    Motion to Suppress Statements (Doc. 59)

Sepling seeks to have statements suppressed that he gave to law enforcement officers on the grounds that the statements were involuntary and were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).  The Government, however, argues that Sepling was provided with a Statement of Rights Form which he signed setting forth that his rights were "waive[d] freely and voluntarily, without

---

[2]    The decision whether to grant a defendant an evidentiary hearing prior to ruling on a motion to suppress is left to a district court's sound discretion. *See United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010).  "To require a hearing, a suppression motion must raise 'issues of fact material to the resolution of the defendant's constitutional claim.'" *Id* (quoting *United States v. Voight*, 89 F.3d 1050, 1067 (3d Cir. 1996)).  Thus, "a motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectual, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Hines*, 628 F.3d at 105 (citing *Voight*, 89 F.3d at 1067).  When the defendant does not "(1) state a colorable legal claim, (2) identify facts material to that claim, (3) show why the facts are disputed, and then (4) request a hearing to resolve the dispute," a district court may deny the defendant an evidentiary hearing. *See Hines*, 628 F.3d at 108.  Here, as Sepling does not identify facts material to his claim and does not refute the Government's version of events, the Court finds it unnecessary to conduct an evidentiary hearing on Sepling's suppression motions.

threat or intimidation and without any promise of reward or immunity." (Doc. 61, Ex. A.) After waiving his rights, Sepling informed officers of the method in which he obtained the GBL. (Doc. 61.)

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In *Miranda*, 384 U.S. 436, the Supreme Court held that statements obtained during a custodial interrogation where a person was not informed of his right to counsel or his right to remain silent were obtained in violation of the Fifth Amendment and were, therefore, inadmissible. *Id*. at 477–79. Statements elicited during a custodial interrogation are admissible only if a person voluntarily, knowingly and intelligently waives his rights. *Id*. at 444, 475. If a person requests counsel at any point during such an interrogation, law enforcement officials must stop the questioning. *Id*. at 445.

A defendant who has been advised of, but has not yet invoked, his *Miranda* rights may waive them—provided he does so knowingly, intelligently and voluntarily, given the totality of the circumstances. *See Moran v. Burbine*, 475 U.S. 412, 422–23, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). In order to be valid: (1) "the waiver must have been voluntary 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception;'" and (2) "the waiver 'must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir.1989) (quoting *Moran*, 475 U.S. at 421). Factors relevant to determining whether a statement is voluntary include the following: whether the police engaged in coercive activity; the length, location and continuity of the interrogation; the age, education, physical and mental condition of the defendant; and whether the police advised the defendant of his rights to remain silent and have counsel present during an interrogation. *See Withrow v. Williams*, 507 U.S. 680, 693, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). It is the government's burden to show by a preponderance of the evidence that the challenged statements are voluntary. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

Contrary to Sepling's contentions, there is no information available that suggests that the statements provided to the Government were made involuntarily or in violation of *Miranda*. In particular, the Government has established that Sepling was advised of his rights as required by *Miranda*. After being informed of these rights, Sepling signed the waiver of rights stating that his rights were voluntarily waived after they were fully explained. (Doc. 61, Ex. A.) And, as Sepling does not dispute the Government's version of the events or Defendant's signing of the waiver of rights form, his motion to suppress statements will be denied.

### III. Conclusion

For the reasons stated above, Defendants' motions will be granted in part and denied in part.

An appropriate order follows.

April 19, 2012
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge